**Jeff WIEGAND, on behalf of himself and all persons similarly situated, Appellant,**

v.

**WALSER AUTOMOTIVE GROUPS, INC., and all related dealerships including but not limited to: Walser Plymouth C., L.L.C., d/b/a Walser Chevrolet; et al., Respondents.**

**No. A03–250.**

Court of Appeals of Minnesota.

Oct. 28, 2003.

Thomas J. Lyons, Jr., John H. Goolsby and Thomas J. Lyons, Thomas Lyons & Associates, Little Canada, for appellant.

William M. Hart, Melissa Dosick Riethof, Meagher & Geer, P.L.L.P., Minneapolis, for respondent Walser Automotive Group, Inc.

Considered and decided by HARTEN, Judge, G. BARRY ANDERSON, Judge, and WRIGHT, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant Jeff Wiegand sued respondent Walser Automotive Group (Walser), asserting that Walser's misrepresentations violated Minn.Stat. § 325F.69, subd. 1 (2002), and that he was entitled to damages for this violation pursuant to Minn.

Stat. § 8.31, subd. 3a (2002). In this appeal from the district court's dismissal of Wiegand's claim for failure to state a claim under Minn. R. Civ. P. 12.02(e), Wiegand argues that the district court erred when it dismissed his claim by ruling that Wiegand could not show reliance on respondents' alleged misrepresentations. We affirm.

## FACTS

On or about September 26, 1998, Wiegand visited a Walser dealership to purchase an automobile. In his complaint, Wiegand alleged that a Walser representative told Wiegand that he was required to purchase a $1,500 service contract in order to obtain financing. The parties do not dispute that the service contract stated that financing could not be made contingent on the purchase of a service contract. The document includes the following language above the signature line on the service contract, "I understand that the purchase of this service contract is not required in order to obtain financing or to purchase this vehicle." Wiegand also alleged that a Walser representative told him that he had to purchase a $340.37 credit insurance policy in order to obtain financing. The sales contract states, "Credit insurance is not required." Wiegand further alleged that a Walser representative told him that after he made 12 monthly payments to the bank, he could refinance at a lower annual percentage rate (APR). After making the 12 monthly payments, Wiegand contacted a bank employee who told him that the bank would not refinance. The parties do not dispute that the payment schedule set out in the sales contract signed by Wiegand does not provide for a lower APR after 12 monthly payments.

Wiegand brought a claim against Walser as part of class action litigation, alleging violations of Minn.Stat. § 325F.69, subd. 1 (2002), a provision of the Minnesota Consumer Fraud Act (CFA), and Minn.Stat. § 168.71(a), (b) (2002), a provision of the Minnesota Motor Vehicle Retail Installment Sales Act. Walser moved to dismiss the complaint for failure to state a claim under Minn. R. Civ. P. 12.02(e), and the district court granted Walser's motion. This appeal, which only raises issues related to section 325F.69, subd. 1, followed.

## ISSUE

Did the district court err when it dismissed Wiegand's claim because reliance on the alleged misrepresentation in an action under the Consumer Fraud Act could never be proven?

## ANALYSIS

Wiegand argues that the district court erred when it granted Walser's motion pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted, and dismissed Wiegand's section 325F.69, subd. 1 claim. When reviewing a dismissal pursuant to rule 12.02(e), an appellate court must determine "whether the complaint sets forth a legally sufficient claim for relief." *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003). Thus, the applicable standard of review is de novo. *Id.* "[I]t is immaterial whether or not the plaintiff can prove the facts alleged, and we will not uphold a Rule 12.02(e) dismissal 'if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded.'" *Martens v. Minnesota Min. & Mfg. Co.,* 616 N.W.2d 732, 739–40 (Minn. 2000) (citation omitted) (quoting *Northern States Power Co. v. Franklin,* 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963)).

Wiegand brought his claim pursuant to two statutes that, together, permit an indi-

vidual to seek damages for a violation of Minnesota's consumer fraud statutes. Minn.Stat. § 325F.69 (2002), prohibits fraud and misrepresentation related to the sale of merchandise. *See Flynn v. American Home Products Corp.*, 627 N.W.2d 342, 351 (Minn.App.2001).

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

Minn.Stat. § 325F.69, subd. 1 (2002). Thus, section 325F.69, subd. 1, authorizes enjoining violators of the statute. Minn. Stat. § 8.31, subd. 3a (2002), the Private Attorney General statute, authorizes a private action seeking damages for a violation of Minn.Stat. § 325F.69. *See Flynn*, 627 N.W.2d at 351; *see also Ly v. Nystrom*, 615 N.W.2d 302, 310 (Minn.2000).

> In addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court.

Minn.Stat. § 8.31, subd. 3a (2000).

■ Wiegand's challenge on appeal hinges on the distinction between a private action seeking damages pursuant to the CFA and a common law fraud action. A claim pursuant to Minn.Stat. § 8.31, subd. 3a, alleging a violation of Minn.Stat.

§ 325F.69, subd. 1, has two elements: (1) there must be an intentional misrepresentation relating to the sale of merchandise, and (2) the misrepresentation must have caused damage to the plaintiff. *Group Health Plan, Inc., v. Philip Morris Inc.*, 621 N.W.2d 2, 12 (Minn.2001) (noting that "to state a claim that any of the substantive statutes has been violated, the plaintiff need only plead that the defendant engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby.") [1]; Minn.Stat. § 325F.69, subd. 1 (prohibiting misrepresentation); Minn. Stat. § 8.31, subd. 3a (requiring injury "by violation" of consumer fraud laws, including Minn.Stat. § 325F.69). The plaintiff's reliance on the defendant's misrepresentation, however, is not an independent, third element of a claim pursuant to Minn.Stat. § 325F.69, subd. 1, and Minn.Stat. § 8.31, subd. 3a. *Group Health*, 621 N.W.2d at 12 (stating that "[a]llegations of reliance are therefore not necessary to state a claim under section 8.31, subdivision 3a, for damages resulting from a violation.").

*Group Health* clarified the role of reliance in a section 8.31, subd. 3a, action. Although it explicitly held that reliance is not an independent element of a private action for damages based on a violation of Minn.Stat. § 325F.69, subd. 1, it also held that reliance is a necessary component of the causation element of such a claim.

> [A]s a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes. Therefore, in a case such as this, it will be necessary to prove reli-

---

1. *Group Health* analyzed a plaintiff's suit for damages based on violations of two other statutes in addition to Minn.Stat. § 325F.69, and thus language in the opinion often refers to these as "the substantive statutes." *Group Health*, 621 N.W.2d at 5–6 (analyzing Minn. Stat. §§ 325F.67, 69, subd. 1, 325D.13 (2000)).

ance on those statements or conduct to satisfy the causation requirement. *Group Health,* 621 N.W.2d at 13.

▮ In contrast to a CFA claim, common law fraud requires a showing of reliance. *See Flynn,* 627 N.W.2d at 349 (stating that fraudulent misrepresentation requires that "representation caused the other party to act in reliance").

> In passing consumer fraud statutes, the legislature clearly intended to make it easier to sue for consumer fraud than it had been to sue for fraud at common law. The legislature's intent is evidenced by the *elimination* of elements of common law fraud, such as proof of damages or reliance on misrepresentations. (emphasis in original)

*State by Humphrey v. Alpine Air Prods., Inc.,* 500 N.W.2d 788, 790 (Minn.1993).

Ruling on Walser's motion to dismiss, the district court concluded that the reliance necessary to prove the causation element in this CFA action could never be proven. Although Wiegand alleged that the Walser representative's oral representation prompted the purchase of the service contract and credit insurance and caused him to believe that refinancing would be possible, the district court concluded that because the contracts Wiegand signed contradicted these oral representations, "case law is clear that such reliance can never be proven."

The district court relied on *Scott v. Forest Lake Chrysler–Plymouth–Dodge,* 598 N.W.2d 713, 720 (Minn.App.1999), *review denied in part* (Minn. Nov. 17, 1999) (denying review on consumer-fraud issue), *rev'd on other grounds,* 611 N.W.2d 346 (Minn.2000) and cited it for the proposition that "when oral representations contradict clear and unambiguous contract language, reliance on the oral representation is unjustifiable as a matter of law." In *Scott,* the defendant dealership sold a vehicle to

Scott, the plaintiff in an action brought under section 325F.69, subd. 1. *Id.* at 715. Scott alleged that a representative of the dealership orally represented that the credit terms of a retail installment contract represented the final agreement, but the language of a conditional delivery agreement signed by Scott "expressly stated that the vehicle was delivered to Scott conditionally subject to financing approval." *Id.* at 720. Scott also alleged that a representative of the dealership stated that the vehicle's price would be reduced if Scott signed a retail installment contract with a higher interest rate than he had originally agreed to pay. *Id.* This court held that the district court properly granted summary judgment in favor of the dealership where "Scott cite[d] no authority applying Minn.Stat. § 325F.69, subd. 1, when oral representations contradicted clear and unambiguous contract language, and the contract language at issue was written in normal type and not hidden among standard form clauses." *Id.* Thus, we concluded that summary judgment was proper when a plaintiff could not show that its reliance on the dealership's oral representations was reasonable because those representations were clearly and unambiguously contradicted by language contained in a written contract. *Id.*

We recognize that in *Scott* we cited authority addressing common law fraud. *See St. Croix Printing Equip., Inc. v. Rockwell Int'l Corp.,* 428 N.W.2d 877, 882 (Minn. App.1988) (stating that in common law fraud action, "reliance on an oral representation is unjustifiable as a matter of law only if the written contract directly contradicts the oral representation"), *review denied* (Minn. Nov. 16, 1988). We did not distinguish in *Scott* between CFA and common law fraud cases as to what constitutes justifiable reliance. Our decision in *Scott* was reviewed by the Minnesota Su-

preme Court and the portion of our decision regarding reasonable reliance was not reversed. *See Scott v. Forest Lake Chrysler–Plymouth–Dodge,* 611 N.W.2d 346 (Minn.2000).

We conclude that the district court here properly decided that the complaint did not set forth a sufficient claim for relief. As noted above, the causation element of a claim pursuant to section 325F.69, subd. 1, requires that reliance on the defendant's statements be proven. *Group Health,* 621 N.W.2d at 13. *Scott* addresses reliance as it relates to the causation necessary to establish a CFA claim, and we follow its holding.

Both by the language contained in his complaint, and by his reference to the contracts in question, Wiegand has alleged facts establishing that, as a matter of law, cannot prove causation. *Id.* By operation of the rule announced in *Scott,* it is impossible for Wiegand to produce evidence showing that he would be entitled to relief. We must therefore affirm the district court. *Cf. Martens,* 616 N.W.2d at 739–40 (stating that "we will not uphold a Rule 12.02(e) dismissal if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded").

■ Wiegand alleged that a representative of Walser told him that he was required to purchase a $1,500 service contract in order to obtain financing. But the service contract, referenced by and attached to the complaint, expressly stated that financing could not be made contingent on its purchase. Wiegand also alleged in his complaint that a Walser representative told him that he had to purchase a $340.37 credit insurance policy in order to obtain financing. But the sales contract, also referenced by and attached to the complaint, states that "[c]redit insurance is not required." Wiegand also al-

leged in the complaint that a Walser representative told him that, after he made 12 monthly payments to the bank, he could refinance at a lower annual percentage rate (APR). After making the 12 monthly payments, Wiegand contacted a bank employee who told him that the bank would not refinance. But the payment schedule contained in the sales contract referenced by and attached to the complaint expressly states that Wiegand must make 52 payments at a 19.75% interest rate and does not provide any option for a lower APR. Each of the oral misrepresentations alleged by Wiegand is contradicted by direct, clear, and unambiguous contractual language included as part of his pleadings.

■ While it is undisputed that the Consumer Fraud Act clearly reflects the legislature's intent to "make it easier to sue for consumer fraud" than to sue for common law fraud, *Alpine Air Prods., Inc.,* 500 N.W.2d at 790, that is not the same as the elimination of *any* reliance requirement for purposes of a rule 12 motion. Appellant argues thoroughly and clearly the proposition that *any* consumer under the CFA may assert, for rule 12 purposes, oral misrepresentations directly refuted by written contract between the parties to support a claim. Appellant's argument, if correct, represents a significant departure from the traditional view that written contracts are important documents and not lightly disregarded. *See Minneapolis Public Housing Authority v. Lor,* 591 N.W.2d 700, 704 (Minn.1999) (stating, "Unambiguous contract language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh.").

*Group Health* carefully limited the change in a reliance requirement in a CFA action noting specifically that "[t]he type of proof required to satisfy the causation-based reliance factor may be different in a

case of different scope or based on different causes of action." *Group Health,* 621 N.W.2d at 15 n. 10. We are unwilling to extend *Group Health,* and to adopt a position directly contrary to *Scott,* in the absence of clear direction from the supreme court that, for rule 12 purposes, the CFA permits a cause of action where alleged oral misrepresentations directly contradict otherwise unobjectionable contractual language. Thus, as a matter of law, Wiegand's reliance on those oral misrepresentations was not justified and cannot form the basis of a cause of action under the CFA.

## DECISION

Because, as a matter of law, Wiegand could not prove causation with the facts alleged in his complaint, the district court properly granted Walsers motion to dismiss for failure to state a claim upon which relief may be granted.

**Affirmed.**

WRIGHT, Judge (dissenting).

Because application of the common law doctrine of justifiable reliance to Consumer Fraud Act cases eviscerates the legislature's intent to provide broader consumer protection than that found in common law fraud cases, I respectfully dissent. The Consumer Fraud Act, Minn.Stat. § 325F.69 (2002), clearly reflects the legislature's intent to "make it easier to sue for consumer fraud than it had been to sue for fraud at common law." *State by Humphrey v. Alpine Air Prods., Inc.,* 500 N.W.2d 788, 790 (Minn.1993). This intent is evinced by "the *elimination* of elements of common law fraud, such as proof of damages or reliance on misrepresentations." *Id.* (emphasis in original). To fulfill this purpose, reliance has been eliminated as an element of the Consumer Fraud Act. Minn.Stat. § 325F.69 (creating

cause of action for a false promise or misleading statement made in connection with a sale with the intent that others will rely on it, regardless of whether "any person has in fact been misled, deceived, or damaged" by the fraud); *Alpine Air Prods., Inc.,* 500 N.W.2d at 790.

Allegations of misrepresentations made with the intent to induce the customer to rely on the misrepresentations are sufficient to plead a claim under the Consumer Fraud Act. *See LeSage v. Norwest Bank Calhoun–Isles, N.A.,* 409 N.W.2d 536, 541 (Minn.App.1987) (holding that, in suit for damages, genuine issues of material fact under the Consumer Fraud Act were presented in allegations that defendant made misrepresentations of fact known to him with an intent that the plaintiffs rely on the statements and invest their money). While reliance is an element of common law fraud, *Flynn v. Am. Home Prods. Corp.,* 627 N.W.2d 342, 349 (Minn.App. 2001), allegations of reliance are not necessary to state a claim under the Consumer Fraud Act for damages resulting from a violation brought pursuant to Minn.Stat. § 8.31, subd. 3a (2002), the private attorney general statute. *Group Health Plan, Inc. v. Philip Morris Inc.,* 621 N.W.2d 2, 12 (Minn.2001). Here, Wiegand need only allege (1) an intentional misrepresentation relating to the sale of merchandise and (2) damages caused by the misrepresentation. *Id.* A review of the complaint establishes that Wiegand has set forth a legally sufficient claim for relief.

The district court, however, dismissed this case for failure to state a claim, based on our ruling in *Scott v. Forest Lake Chrysler–Plymouth–Dodge,* 598 N.W.2d 713 (Minn.App.1999), *rev'd on other grounds* 611 N.W.2d 346 (Minn.2000), which imports common law reliance, the precise element that the legislature has intentionally eliminated, into Consumer

Fraud Act cases. *Group Health* makes clear that reliance is a component of causation that must be proved in Consumer Fraud Act suits brought under Minn.Stat. § 8.31, subd. 3a. 621 N.W.2d at 12. But nothing in the *Group Health* decision can be read to require Wiegand to meet the heightened common law standard of justifiable reliance to prove causation, particularly in light of the Consumer Fraud Act's abrogation of the common law to make it easier for consumers to sue for fraud than proceeding at common law. *Id.* ("Imposing a requirement to plead common law reliance in a statutory claim intended to alleviate the burdens of a common law fraud action would be contrary to the legislature's intent.") If, as the majority opinion concludes, the common law standard of justifiable reliance applies, the result ignores the legislature's intent, removes the broader consumer protection against fraud available under the Consumer Fraud Act, and renders the Act indistinguishable from common law fraud.

"The legislature may, by statute, expand the necessary connection between conduct and injury necessary to permit suit." *State by Humphrey v. Philip Morris, Inc.,* 551 N.W.2d 490, 495 (Minn.1996). The legislature did not exclude suits for damages under Minn.Stat. § 8.31, subd. 3a, from its intent to provide broader consum-

er protection. Rather, section 8.31, subdivision 3a, expressly includes the Consumer Fraud Act among those statutes where private suits are authorized to encourage aggressive prosecution of statutory violations. *Philip Morris,* 551 N.W.2d at 495. Indeed, the *Group Health* court rejected the imposition of a reliance standard in Consumer Fraud Act cases that would effectively "reinstate the strict common law reliance standard that ... the legislature meant to lower for these statutory actions." 621 N.W.2d at 15.

To prove the "causal nexus" enunciated in *Group Health,* Wiegand need only prove what he has pled—that the alleged oral misrepresentations caused him to suffer damages. *See id.* at 13–14. Whether the causal nexus exists is a disputed question of fact that, at this early stage in the proceedings, is not ripe for resolution. Accordingly, I would reverse the district court's dismissal of the case for failure to state a claim and remand for further proceedings.